

*Brenda Moody Whinery, Bankruptcy Judge*

---

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 4:13-bk-01738-BMW |
| COMMUNITY HEALTHCARE OF DOUGLAS, INC., | Chapter 11 |
| Debtor. | **ORDER:** |
| | **(A) APPROVING THE SALE AND ASSIGNMENT OF ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, LIABILITIES AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND (C) GRANTING RELATED RELIEF** |

Upon the motion (the "**Sale Motion**")[1] of Community Healthcare of Douglas, Inc., an Arizona nonprofit corporation (the "**Debtor**") for entry of orders, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), and rules 2002,

---

[1] All capitalized terms used but not defined herein shall have the meanings set forth in the Sale Motion.

6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 6004-1 and 6006-1 of the Local Rules of Bankruptcy Procedure for the District of Arizona (the "**Local Bankruptcy Rules**") authorizing (a) the sale of substantially all of the assets relating to the Debtor's business and certain real property and other assets owned by the Debtor, whether or not used in the Debtor's business, as described in and pursuant to the terms and conditions in that certain Asset Purchase Agreement dated September 24, 2013 by and between People's Choice Hospital, LLC ("**PCH**"), a Delaware limited liability corporation or its designee (a recently formed Arizona nonprofit corporation) (the "**Buyer**") and the Debtor, as amended by that certain First Amendment to the Asset Purchase Agreement dated October 15, 2013 by and between Buyer and the Debtor, and as modified on the record, (collectively, the "**APA**") in connection with the sale of substantially all of the Debtor's assets, which are defined as the "**Hospital Assets**" in the APA; (b) the assumption and assignment of specified contracts and leases identified in the APA; and a hearing on the Sale Motion having been held on December 11, 2013 (the "**Sale Hearing**"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Sale Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Sale Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and notice of the Sale Motion appearing adequate and appropriate under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Sale Motion, considered the argument of counsel at the Sale Hearing, evidence from witnesses, including proffers, and the considered the Sale Motion, the notice of Sale Motion, and all other

documents, papers and exhibits filed in connection therewith and support thereof, including (i) the APA, a copy of which is attached hereto as **Exhibit 1**; (ii) Declaration of Annie Benson in Support of Sale Motion filed as D.E. 254; and the Court having taken judicial notice of the pleadings, papers, and other records contained in the Court's file in this case, and the Court having determined that there is sufficient cause to grant relief and that such relief is in the best interests of the Debtor's estate; and no objections to the relief requested herein having been filed; and after due deliberation and sufficient cause appearing,

**IT IS HEREBY FOUND AND DETERMINED:**

**<u>General</u>**

A.       Unless otherwise indicated herein, all capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion or the APA, as applicable; provided, however, that in the event of an inconsistency between the definitions set forth in the Sale Motion or the APA, the meanings ascribed to such terms in the APA shall control.

B.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in this proceeding pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.       On October 22, 2013, the Court entered that certain *Order (A) Approving Bidding Procedures, Entry Into Stalking Horse Agreement and Bid Protections in Connection With Sale of Debtor's Assets; (B) Approving Form and Manner of Notice; (C) Scheduling Auction and Sale Hearing And (D) Approving Procedures for Determining Cure Costs* (D.E. 228) (the "**Bidding**

**Procedures Order**"), pursuant to which the Court, *inter alia*, authorized the auction for sale of substantially all of the assets of the Debtor (the "**Auction**") and approved the bidding procedures contained in the Sale Motion and annexed to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**").

D.      On October 23, 2013, the Debtor filed (i) that certain *Notice of (A) Intended Sale of Debtor's Assets Free and Clear of Liens, Claims and Encumbrances; (B) Bidding Procedures; (C) Deadlines for Submitting Offers and Objections; and (D) Hearing Dates* (D.E. 230) (the "**Sale Notice**"); (ii) that certain *Notice of Bidding Procedures* (D.E 231); and (iii) that certain *Notice of (I) Proposed Assum*ption and Assignment *of Executory Contracts and Unexpired Leases Incident to Sale of Substantially All Assets and of Related Hearing and Objection Deadline* D.E. 229) pursuant to the Bidding Procedures.

E.      On November 8, 2013, that Debtor filed that certain second *Notice of (I) Proposed Assum*ption and Assignment *of Executory Contracts and Unexpired Leases Incident to Sale of Substantially All Assets and of Related Hearing and Objection Deadline* (D.E. 243) (the "**Assignment Notice**") pursuant to the Bidding Procedures.

F.      As evidenced by the Sale Notice, the Assignment Notice and the certificates of service filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the Assumed Contracts and Leases (as that term is defined in the APA and as set forth on Schedule 2.1(e) thereto, as may be amended by the Buyer prior to Closing)), the Bidding Procedures Order, the Bidding Procedures, the Assignment Notice, the Auction and the Sale Hearing was provided in accordance with sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, all other

applicable Bankruptcy Rules, Local Rules, and provisions of the Bankruptcy Code, the Bidding Procedures Order, and the Bidding Procedures, as applicable, including timely and adequate service of the Sale Notice; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the Assumed Contracts and Leases), the Bidding Procedures Order, the Bidding Procedures, the Assignment Notice, the Sale Hearing and/or the entry of this Order is required.

G.      The Debtor's service of the Sale Notice and the Assignment Notice constitute good and sufficient notice of (i) the Debtor's intent to assume and assign the Assumed Contracts and Leases to the Buyer on the terms set forth in the APA, (ii) the Debtor's proposed Cure Amounts (as defined in the APA) to be paid in accordance with §365(b)(1)(A) and (B) and 365(f)(2)(A) with respect to such Assumed Contracts and Leases, (iii) the Sale Objection Deadline (as defined in the Bidding Procedures Order), (iv) the Section 365 Objection Deadline (as defined in the Bidding Procedures Order), and (v) the Assigned Contract Objection Procedures (as defined in the Bidding Procedures Order).  No other or further notice of the Debtor's intent to assume and assign the Assumed Contracts and Leases to Buyer, or of the Cure Amounts, need have been or need be given.

H.      A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, including notice of the Sale Objection Deadline and Cure Section 365 Objection Deadline, has been afforded to all interested persons and entities, including, but not limited to: (i) each of the Key Parties (as defined in the Bidding Procedures Order); (ii) all known persons asserting a Lien (as defined herein) in, to or against any of the Hospital Assets; (iii) all creditors of the Debtor; (iv) all parties to executory contracts and

unexpired leases; (v) all known parties who have made written expressions of interest in acquiring the Hospital Assets; (vi) all applicable federal, state and local taxing authorities; (vii) all applicable federal, state and local governmental units; and (viii) all entities who have filed a notice of appearance and/or request for service of papers in the Debtor's bankruptcy case pursuant to Bankruptcy Rule 2002.

## Validity of Liens

I.       As set forth in that certain *Final Order: (A) Authorizing Postpetition Financing on a Senior Secured Basis; (B) Authorizing Use of Cash Collateral; (C) Granting Adequate Protection; (D) Granting Related Relief; and (E) Scheduling a Final Hearing* dated March 22, 2013 (D.E. 58) (the "**Final DIP Order**") and subject to the DIP Priming Liens discussed in Paragraph K of this Order, the Debtor stipulated, *inter alia,* (i) to the amount and validity of the Prepetition Secured Obligations (as defined in the Final DIP Order) and that the Prepetition Secured obligations are secured by first priority Prepetition Liens (as defined in the Final DIP Order) and security interests in the Prepetition Collateral (as defined in the Final DIP Order), (ii) the Prepetition Secured Obligations constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Existing Loan Documents (as defined in the Final DIP Order), (iii) no offsets, defenses or counterclaims to the Prepetition Secured Obligation exist, and no portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iv) that Prepetition Lender's[2] claims with respect to the Prepetition Secured

---

[2]       On June 18, 2013, Sierra Vista Regional Legacy Foundation ("**Sierra Vista**"), as successor to Sierra Vista Regional Health Center, Inc., assigned its Allowed Prepetition Secured Claim (as defined in the APA) to People's Choice Hospital, LLC.  *See* Bankruptcy Rule 3001(e) Transfer of Claim filed on June 20, 2013 [D.E. 135].  For purposes of this Order. People's Choice Hospital, in its capacity as assignee of the

(continued...)

Obligations shall for all purposes constitute an allowed secured claim within the meaning of section 506 of the Bankruptcy Code in an amount not less than the outstanding amount of the Prepetition Secured Obligations.

      J.     Pursuant to the Final DIP Order, any party had until no later than 45 days after the appointment of a committee in this case (which did not occur), or such later date as has been agreed to, in writing, by the Lender in respect of challenges initiated against the Lender (A) challenging the validity, enforceability, priority or extent of the Prepetition Secured Obligations or (B) otherwise asserting or prosecuting any avoidance actions or any other claims, counterclaims, causes of action, objections, contests, or defenses against the Prepetition Lender. No party filed a timely claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Secured Obligations, the Prepetition Liens (as defined in the Final DIP Order) or any other claims or causes of action against Prepetition Lender in accordance with the foregoing deadlines. None of the Allowed Prepetition Secured Claim, the Prepetition Secured Obligations or the Prepetition Lines is subject to challenge in any way by any party-in-interest.

      K.     Pursuant to the Final DIP Order, Sierra Vista (the "**DIP Lender**") made a DIP Loan (as defined in the Final DIP Order) and the Final DIP Order provides, *inter alia*, all of the DIP Obligations (as defined in the Final DIP Order) constitute Superpriority Claims (as defined in the Final DIP Order) against the Debtor with priority over any and all administrative expenses, and all other claims against the Debtor, existing or arising, of any kind whatsoever, and which Superpriority Claims (as defined in the Final DIP Order) shall be payable from and have

---

Allowed Prepetition Secured Claim and as  assignee of all of Sierra Vista's rights under the Existing Loan Documents, shall be referred to as the "Prepetition Lender"

recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (other than chapter 5 avoidance actions). Moreover, as security for the DIP Obligations (as defined in the Final DIP Order), DIP Lender was granted DIP Liens (as defined in the Final DIP Order), including certain DIP Priming Liens (as defined in the Final DIP Order), in all of the DIP Collateral (as defined in the Final DIP Order).

### The Sale Process for the Hospital Assets

L.      The Debtor has demonstrated a sufficient basis and the existence of exigent circumstances requiring it to conduct the transactions contemplated by the APA (the "**Sale Transaction**"), including the sale of the Hospital Assets and the assumption and assignment of the Assumed Contracts and Leases, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate and its creditors.

M.      The Debtor and the Buyer have complied with the Bidding Procedures and the Bidding Procedures Order in all respects.

N.      The Debtor has marketed the Hospital Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and best offer or offers therefor by, among other things, being ready, willing and able to deliver offering materials to potential buyers and inviting potential buyers to meet with management and the Debtor's professionals, being ready, willing and able to provide potential buyers with the opportunity to conduct extensive due diligence, and being ready, willing and able to provide potential buyers, upon request, with sufficient information to enable them to make an informed judgment on whether to bid on the Hospital Assets. In addition, the Debtor served the Sale Motion, the Sale Notice, the Bidding Procedures Order, the Bidding Procedures, and the APA to each person or entity that had previously expressed an interest in purchasing the Hospital Assets.

O.     Pursuant to the Bidding Procedures, as approved by the Court, the Buyer submitted the only, and therefore, highest and best offer for the Hospital Assets on the terms and conditions set forth in the APA.

P.     The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or better offer to purchase the Hospital Assets and no higher or better offer was timely made.

## The Sale of the Hospital Assets to the Buyer

Q.     The transactions effectuating, and the terms and conditions governing, the sale of the Hospital Assets to the Buyer are embodied in the APA.  A description of the Hospital Assets and the Assumed Contracts and Leases are contained in the APA.

R.     The Debtor has advanced sound business reasons for seeking authority to enter into the APA, to sell the Hospital Assets, and to assume and assign the Assumed Contracts and Leases, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtor's business judgment to sell the Hospital Assets and to execute the APA with the Buyer.

S.     The relief sought in the Sale Motion, including approval of the APA and consummation of the Sale Transaction, is in the best interests of the Debtor, its estate, its creditors and all parties in interest.  The terms and conditions of the APA, including the total consideration to be realized by the Debtor pursuant to the APA, are fair and reasonable.  The Sale Transaction is necessary to preserve the viability of the Debtor's business as a going concern and to maximize the value of the Debtor's estate.

T.     The Debtor has full corporate power and authority to execute the APA and all other documents and agreements contemplated thereby, to sell the Hospital Assets, and has been

duly and validly authorized by all corporate authority necessary to consummate the Sale Transaction. No consent or approvals, other than as expressly provided for in the APA, are required by the Debtor to take such action.

U.    The Debtor has the right to convey, good, clear, marketable title to the Hospital Assets (or in the case of executory contracts and leased assets, valid and enforceable leasehold interests, or in the cases of certain licenses, valid and enforceable rights thereunder), is the sole lawful owner, lessee or licensee of, the Hospital Assets, and pursuant to this Order has the full right to sell, transfer, convey, assign and deliver the Hospital Assets to the Buyer free and clear of all liens, pledges, mortgages, security interests, claims (as defined in Section 101(5) of the Bankruptcy Code), interests, encumbrances and other rights of third parties, of any nature (collectively, "**Liens**").

V.    Any and all entities who assert a Lien against or in any of the Hospital Assets have either consented to the Sale Transaction, or, (i) such Lien is subject to a bona fide dispute; or (ii) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien and therefore section 363(f) of the Bankruptcy Code has been satisfied.

W.    The Buyer is a good faith buyer in accordance with section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The APA was negotiated and proposed, and has been entered into by the parties, in good faith within the meaning of section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion. The Buyer did not engage in any collusion in placing its bid to purchase the Hospital Assets. Absent a stay of the effectiveness of this Order, if any, the Debtor and the Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code

in closing the Sale Transaction, including the assumption and assignment of the Assumed Contracts and Leases, at any time after the entry of this Order.

X.      The Sale Transaction will, upon the Closing, (i) be a legal, valid, and effective transfer of the Hospital Assets to the Buyer with no further action required on the part of the Debtor, and (ii) vest the Buyer with good title to the Hospital Assets free and clear of all Liens within the meaning of section 363 of the Bankruptcy Code.

Y.      The sale of the Hospital Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. The APA is not a *sub rosa* chapter 11 plan for which approval has been sought without the protections a disclosure statement would afford. The Debtor and the Buyer have, to the extent necessary, and subject to the terms and conditions set forth herein, satisfied the requirements of section 365 of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code, in connection with the Sale Transaction and the assumption and assignment of any Assumed Contracts and Leases. The Debtor has (i) cured, or has provided adequate assurance of cure, of all defaults (or other amounts accrued prior to Closing) under the Assumed Contracts and Leases, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default before the date of this Order under the Assumed Contracts and Leases, if any. The Buyer has provided adequate assurance of its future performance of and under all of the Assumed Contracts and Leases, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

Z.      Except as otherwise provided in the APA, consummation of the Sale Transaction will not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities or

4851-3056-8215, v. 5

claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor or any other person by reason of such transfers and assignments, including, without limitation, liabilities based on any theory of antitrust, de facto merger, substantial continuity, successor or transferee liability; environmental liabilities or obligations; labor and employment liabilities, tax liabilities arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Hospital Assets prior to the Closing of the Sale Transaction.

AA.   The Buyer is not successor of the Debtor, there is no substantial continuity between the Buyer and the Debtor, and there is no continuity of enterprise between the Buyer and the Debtor.  The Buyer is not an "insider" or otherwise an "affiliate" of the Debtor (as such terms are defined in section 101 of the Bankruptcy Code).

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

**<u>General Provisions</u>**

1.      The Sale Motion is GRANTED.

2.      All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and to the extent that objections to the Sale Motion or the relief requested therein have not been withdrawn, waived or settled, such objections and all reservations of right included therein, are overruled on the merits.  The parties who did not object, or who withdrew their objections, to the Sale Motion, are deemed to have consented to the relief sought therein, including, without limitation, consummation of the Sale Transaction, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      The Debtor and its professionals have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures.  As demonstrated by (a) the

testimony and other evidence proffered or adduced at the Sale Hearing, and (b) the representations of counsel made on the record at the Sale Hearing, sufficient marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order and the Bidding Procedures. The Debtor (x) afforded interested potential Buyers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Hospital Assets, (y) provided potential Buyers, upon request, with sufficient information to enable them to make an informed judgment on whether to bid on the Hospital Assets, and (z) considered any bids submitted on or before the relevant deadlines established in the Bidding Procedures.

**<u>Approval of the APA</u>**

4.      No party submitted a Qualified Bid (as defined in the Bidding Procedures), and thus there is no need for the Auction. The offer of the Buyer, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtor pursuant to the APA, is the highest and best offer received by the Debtor for the Hospital Assets. The APA, the terms and conditions thereof, and each of the transactions contemplated thereby, are approved in their entirety and are binding upon the parties thereto. Upon entry of this Order, the covenants contained in the APA, to the extent (if any) not already enforceable by their terms, shall be fully enforceable by the parties to the APA in accordance with and subject to the terms and conditions of the APA.

5.      The Debtor has the right to convey, good, clear, marketable title to the Hospital Assets (or in the case of executory contracts and leased assets, valid and enforceable leasehold interests, or in the cases of certain licenses, valid and enforceable rights thereunder), is the sole lawful owner, lessee or licensee of, the Hospital Assets, and pursuant to this Order has the full

right to sell, transfer, convey, assign and deliver the Hospital Assets to the Buyer free and clear of all Liens.

6.      On the Closing Date of the Sale Transaction, Buyer is authorized and directed to (a) wire transfer immediately available funds to (i) Sierra Vista in an amount equal to the DIP Obligations, (ii) the Debtor in an amount equal to sum of (I) the Cure Amounts and (II) $50,000 to be used to pay claims of the Debtor's chapter 11 bankruptcy estate in accordance with the priorities of the Bankruptcy Code (collectively, the "**Cash Consideration**").  The Prepetition Lender's Allowed Prepetition Secured Claim is hereby reduced in an amount equal to the Purchase Price (as defined in the APA) less the sum of the Cash Consideration.  Upon the closing of the Sale Transaction, the Prepetition Lender shall be deemed to have waived the balance of its Allowed Prepetition Secured Claim (as defined in the APA).  Provided that the Cash Consideration has been paid, the Court finds that all claim(s) to surcharge the Prepetition Collateral or the DIP Collateral under section 506(c) of the Bankruptcy Code have been waived by the Debtor or any other party to this proceeding and to the extent that such claim has not been waived, the Court overrules any claims by any other party or creditor to an entitlement to a surcharge against the Prepetition Collateral, the DIP Collateral or the proceeds of the Sale Transaction.

## Transfer of the Hospital Assets to the Buyer

7.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, upon the Closing, the Hospital Assets shall be sold, transferred or otherwise conveyed to Buyer free and clear of all Liens.

8.      Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, the Debtor is authorized and directed to perform its obligations under and to comply with the terms of the APA and to consummate the Sale Transaction, pursuant to and in accordance with the terms and

conditions of the APA and this Order. None of the Excluded Assets (as defined in the APA) shall be sold, transferred or assigned to the Buyer.

9. The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, including those expressly contemplated in the APA, and to take all further actions and execute such other documents as may be (a) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, the Hospital Assets; (b) necessary or appropriate to the performance of the obligations contemplated by the APA; and (c) as may be reasonably requested by the Buyer to implement the APA and consummate the Sale Transaction in accordance with the terms thereof, including, without limitation, modification of the schedule of Assumed Contracts and Leases attached as Schedule 2.1(e) to the APA, all without further order of the Bankruptcy Court.

10. The transfer of the Hospital Assets to the Buyer (a) shall be a valid, legal, binding and effective transfer; (b) shall vest the Buyer with all right, title and interest of the Debtor and its estate in the Hospital Assets; and (c) shall be free and clear of all Liens of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity.

11. Except as otherwise expressly provided in the APA or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, employees, trade creditors, litigation claimants and other creditors, holding or asserting any Lien, arising under or out of, in connection with, or in any way relating to, the Debtor or its estate, the ownership or operation of the Hospital Assets or the Debtor's business

4851-3056-8215, v. 5

prior to Closing, or the sale or transfer of the Hospital Assets to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting such Liens against the Buyer, its successors or assigns, its property or the Hospital Assets.

12.     Except with respect to the Assumed Liabilities set forth in Section 1.3 of the APA, the Buyer shall not have or succeed to any Liens or other obligation of the Debtor or its affiliates.

13.     If any person or entity that has filed a financing statement, mortgage, mechanic's lien, lis pendens or other document or agreement evidencing Liens against or in the Debtor's estate or the Hospital Assets shall not have delivered to the Debtor prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Debtor and its estate or the Hospital Assets or otherwise, then only with regard to Hospital Assets that are purchased by the Buyer pursuant to the APA and this Order, the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the applicable Hospital Assets (but the filing, registration or recording of this Order is not a condition to this Order being binding and effective).   This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office and the filing officer is required to accept and perform the filing, registration and recording of this Order.

14.     All persons or entities in possession of some or all of the Hospital Assets are directed to surrender possession of such Hospital Assets to the Buyer or its respective designees at the time of the Closing of the Sale Transaction.

15.     Following the Closing of the Sale Transaction, and subject to terms of this Order, no holder of any Lien shall interfere with the Buyer's title to or use and enjoyment of the Hospital Assets based on or related to any such Lien or based on any actions the Debtor may take in its Chapter 11 Case, or in the event of a conversion of that case to a case under any other chapter of the Bankruptcy Code, any such actions in that case.

16.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Hospital Assets to the Buyer in accordance with the APA and this Order.

17.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Hospital Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of the Debtor's Chapter 11 Case or the consummation of the Sale Transaction contemplated by the APA.

**Assumption and Assignment of the Assumed Contracts and Leases**

18.     Subject to and conditioned on the Closing of the Sale Transaction, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtor's assumption and assignment or other transfer to the Buyer of all of the Debtor's and its estate's right, title and interest in or under the Assumed Contracts and Leases as set forth on Schedule 2.1(e) of the APA (as may be amended by the Buyer prior to Closing) are hereby approved and all requirements of section 365 of the Bankruptcy Code are hereby deemed satisfied.  For the avoidance of doubt, the Debtor shall be deemed to have assumed and assigned each of the Assumed Contracts and Leases, and the Buyer assumed the liabilities which accrue under each after Closing, as of the date of and effective only upon the Closing of the Sale Transaction and, absent such Closing, each of the Assumed Contracts and Leases shall neither be deemed assumed by the Debtor nor assigned to

the Buyer. Further, if the assumption and assignment of a particular contract takes place after the Closing, then such later date shall be the effective date of such assumption and assignment and for Buyer's assumption of liabilities accruing under such contract thereafter. Notwithstanding any other provision in this Order, the Debtor, Buyer and Cochise County, Arizona have entered into a separate Stipulation which provides, *inter alia*, the Debtor's Lease with Cochise County, Arizona shall be assumed and assigned to the Buyer, but the Lease shall terminate on June 30, 2014.

19. Subject to and conditioned on the Closing of the Sale Transaction, the Debtor is hereby authorized in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code to assume and assign, sell and otherwise transfer the Assumed Contracts and Leases and all of the Debtor's and its estate's right, title or interest therein or thereunder to the Buyer free and clear of all Liens, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts and Leases to the Buyer. No objection being raised by any counterparty to an Assigned Contract that such counterparty's consent was required for the assumption and assignment of such Contract pursuant to section 365 of the Bankruptcy Code, all rights to assert any such objections are conclusively deemed waived and all such counterparties are therefore deemed to have provided consent to the assumption and assignment set forth herein and in the APA.

20. Upon the Debtor's assignment of the Assumed Contracts and Leases to the Buyer under the provisions of this Order and any additional order contemplated by the APA, no default shall exist under such Assigned Contract, and no counterparty to any Assigned Contract shall be permitted to declare a default by the Buyer under such Assigned Contract or otherwise take action against the Buyer as a result of the Debtor's financial condition, bankruptcy or failure to

perform any of its obligations under the relevant Assigned Contract, or as a result of the assignment of such Assigned Contract to the Buyer.

21.     All monetary defaults or other cure (within the meaning of section 365 of the Bankruptcy Code), if any, under the Assumed Contracts and Leases arising or accruing before the Closing (without giving effect to any acceleration clause or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be paid in accordance with this Order and the APA.  The Cure Amount set forth in, as applicable, (i) the Assignment Notice (as may be modified by the Amended Sale Notice), (ii) any stipulation entered into between the Debtor and the non-debtor party to an Assigned Contract, (iii) any prior order of this Court, or (iv) any subsequent order of this Court (in the event there is a dispute as to a Cure Amount and the parties are unable to resolve such dispute), shall be controlling notwithstanding anything to the contrary in any Assigned Contract or other document, and the non-debtor party to each Assigned Contract shall be forever barred from asserting any other claim arising prior to the Closing against the Debtor or the Buyer.

22.     The Buyer has provided adequate assurance of its future performance of and under all of the Assumed Contracts and Leases, within the meaning of, and meets the requirements of, section 365(b)(1)(C) of the Bankruptcy Code.  No counter-party to an Assigned Contract shall be entitled to raise an objection to adequate assurance of future performance any such objections are hereby overruled.

## Public Hearing

23.     On October 18, 2013, counsel for the Debtor sent a letter (the "**Statutory Letter**") attached hereto as Exhibit A to the Attorney General of the State of Arizona, the Director of Arizona Department of Health Services and the Chairman of the Arizona Corporation

Commission (collectively, the "**Arizona Public Officials**") of the proposed Sale Transaction and that they intended on complying with § 10-11253 of the Arizona Revised Statute ("**ARS**") as follows: (i) that the Sale Hearing be treated as the public hearing required by ARS § 10-11253(D); (ii) that the Honorable Brenda M. Whinery, Bankruptcy Court Judge, serve as the hearing officer, as provided in ARS § 10-11253(C)(1); (iii) Buyer will publish the required notices of the Sale Hearing as specified in ARS § 10-11253(C)(2); (iv) that Buyer and the Debtor (and not this Court) will provide written summary information at the Sale Hearing as required by ARS § 10-11253(F); and (v) the transcript from the Sale Hearing shall constitute the "summary report" of the Hearing Officer required by A.R.S. § 10-11253(H); at the request of the Hearing Officer, the Buyer and Debtor shall transmit the transcript, along with a short summary, as required by A.R.S. § 10-11253(H).

24.     None of the Arizona Public Officials responded to the Statutory Letter.  The Court concludes that the Debtor and Buyer have complied with A.R.S. § 10-11253 and further:

(1) finds that the Debtor satisfied ARS § 10-11253(C)(2) by publishing notices of the Sale Transaction in the *Douglas Dispatch* and the *Sierra Vista Herald*, on each of November 20, 2013, November 27, 2013 and December 4, 2013;

(2) finds that Section 11.2 of the APA satisfies the "written summary" of the Sale Transaction required by ARS § 10-11253(F); and

(3) orders and directs the Debtor and the Buyer to transmit the transcript of the Sale Hearing, along with a short summary, to the Arizona State Officials, which shall constitute the "summary report" required by A.R.S. § 10-11253(H).

**Miscellaneous Provisions**

25.    Notwithstanding any other provision in this Order except paragraph 26 below, or any other Order of the Court, or the APA, all of the Debtor's business records, including but not limited to all such records maintained in electronic databases or any other storage media, and the Debtor's business records in the possession of third parties (collectively the "**Business Records**"), shall be preserved by the Debtor and the Buyer.  Buyer shall not be required to incur any costs other than providing space at the Hospital Assets for storage of the Business Records; to the extent the Business Records are retained electronically, Buyer shall not be responsible for the costs of such electronic storage.  Buyer is not responsible for any destruction or damage to the Business Records due to any action beyond its control.  Buyer will provide reasonable notice to the Debtor of its intent to remove, abandon or otherwise cease custody of the Business Records.

26.    Patient information, which is excluded from the definition of "Business Records," shall be preserved by the Debtor and the Buyer.  Buyer agrees to affirmatively comply with the Debtor's privacy policies and shall maintain the confidentiality and security of all patient records and information in accordance with all applicable federal and state laws.

27.    After review, the Patient Care Ombudsman appointed in this case, and given expanded authority to act as a consumer privacy ombudsman pursuant to the Court's order (D.E. 253), is satisfied that the Sale Transaction will not create a loss of privacy or otherwise negatively affect consumers.

28.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the APA, the Sale Motion and this Order.

29.    The consideration provided by the Buyer for the Hospital Assets constitutes reasonably equivalent value and fair consideration (as those terms may be defined in each of the

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

30.     The transactions contemplated by the APA are undertaken by the Buyer in good faith and at arms' length, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction (including the assumption and assignment of the Assumed Contracts and Leases), unless such authorization and such Sale Transaction are stayed pending such appeal by issuance of a stay prior to Closing.

31.     The Buyer, as a buyer in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

32.     The Sale Transaction may not be avoided under section 365(n) of the Bankruptcy Code.

33.     The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and its estate, its creditors, the Buyer, the respective affiliates, successors and assigns of each, and any successor and assign, including, without limitation, any trustee that may be appointed in the Chapter 11 Case or any subsequent chapter 7 proceeding, and any affected third parties, and all other persons asserting Liens against and in the Hospital Assets to be sold to the Buyer pursuant to the APA. The failure specifically to include any particular provisions of the APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, the

Debtor and the Buyer that the APA and any related agreements are authorized and approved herein in their entirety with such amendments thereto as may be made by the parties consistent with this Order prior to the Closing.

34.     Except as specifically set forth in the APA, the APA may be further modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the APA or modify the express terms of this Order.

35.     Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

36.     Notwithstanding anything elsewhere in this Order to the contrary or in the APA to the contrary, this Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the APA, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects), to adjudicate disputes related to this Order or the APA and to enter any orders under Sections 105, 363 and/or 365 (or other relevant provisions) of the Bankruptcy Code with respect to the Assumed Contracts and Leases.

37.     To the extent any conflicts exist with this Order and the APA, the terms of this Order shall govern and control; provided, however, that the rights and obligations of Buyer under its bid, as reflected in the APA, shall not be altered without the consent of Buyer,

38.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including any claims against the proceeds of the Sale Transaction.

SIGNED AND DATED ABOVE

**APPROVED AS TO FORM AND CONTENT BY**:

**MICHAEL W. CARMEL, LTD.**

/s/ Michael W. Carmel
Michael W. Carmel
80 East Columbus Avenue
Phoenix, AZ 85012-2334
Attorneys for Debtor

**GUST ROSENFELD PLC**
/s/ Séan P. O'Brien
Séan P. O'Brien
One E. Washington, Suite 1600
Phoenix, Arizona 85004-2553

and

**GOLDSTEIN & MCCLINTOCK, LLLP**
Harold D. Israel
208 S. LaSalle, Suite 1750
Chicago, IL 60604
Attorneys for Prepetition Lender and Buyer

**SQUIRE SANDERS (US), LLP**
/s/ Bradley A. Cosman
Thomas J. Salerno
Bradley A. Cosman
One East Washington Street, #2700
Phoenix, AZ 85004
Attorneys for the DIP Lender

**OFFICE OF THE UNITED STATES TRUSTEE.**

/s/ Larry L. Watson
Office of the United States Trustee, Region 14

230 N. First Ave, Suite 204
Phoenix, AZ  85003

4851-3056-8215, v.  5